IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAULA SUMMERS,                          )
                                        )
                    Plaintiff,          )
                                        )        CIVIL ACTION
v.                                      )
                                        )        No. 10-2380-JWL
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )
_____ )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying supplemental security income (SSI) benefits under

Title XVI, sections 216(i) and 223, of the Social Security Act.  42 U.S.C. §§ 416(i) and

423 (hereinafter the Act).  Finding error in the Commissioner's evaluation of Dr.

Minhas's medical opinion, the court ORDERS that the decision is REVERSED, and that

judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

REMANDING the case for further proceedings consistent herewith.

I.      Background

Plaintiff applied for SSI benefits on December 5, 2005, alleging disability since

October 10, 2004.  (R. 12, 100-02).  The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 11, 53, 55, 71).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a video hearing before ALJ John E. Sandbothe on August 7, 2008.  Id.  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 11, 23-52).  On November 21, 2008. ALJ Sandbothe issued his decision, denying Plaintiff's application because he found that she has not been disabled within the meaning of the Act.  Plaintiff disagreed with the finding and sought, but was denied, Appeals Council review of the decision.  (R. 1-4, 8).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at

1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v.

Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health &

Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

　　　　An individual is under a disability only if that individual can establish that she has

a physical or mental impairment which prevents her from engaging in any substantial

gainful activity and which is expected to result in death or to last for a continuous period

of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)

(citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity

that she is not only unable to perform her past relevant work, but cannot, considering her

age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's residual functional capacity (hereinafter RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter,

4

245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show jobs in the economy within Plaintiff's

capability.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in failing to properly weigh the treating source

opinion of Dr. Minhas, Plaintiff's treating psychiatrist, and in assessing the effects of

Plaintiff's obesity.  The Commissioner argues that the ALJ properly evaluated Dr.

Minhas's opinion, and properly addressed Plaintiff's obesity.  The court finds that remand

is necessary because the ALJ did not properly discount Dr. Minhas's treating source

opinion and failed to explain how he determined that the state agency psychologist's

reports outweigh the treating psychiatrist's report.  Because the Commissioner will be

required to once again assess Plaintiff's RFC after properly weighing the medical source

opinions on remand, Plaintiff may make her arguments regarding the effects of obesity at

that time, and the court will not address them now.

**III.     Evaluation of Dr. Minhas's Treating Source Opinion**

In making his RFC assessment, the ALJ summarized Plaintiff's allegations of

symptoms and then summarized the medical evidence in roughly chronological order.  (R.

16-19).  In that summary, he discussed some of Dr. Minhas's medical records.  He noted

that Dr. Minhas had made a psychiatric evaluation of Plaintiff in April 2006, and he

provided a relatively extensive summary of that evaluation.  (R. 17) (citing Ex. 5F/2-5 (R.

236-39)).  He noted that Dr. Minhas also saw Plaintiff three weeks later.  <u>Id.</u> (citing Ex.

25F/2 (R. 419)).  Also, in evaluating the 2007 medical records, he summarized Dr.

Minhas's records of an office visit in March 2007.  (R. 18) (citing Ex. 25F/7-8 (R. 424-25)).  After summarizing the evidence, the ALJ found Plaintiff's allegations of symptoms "not credible."  (R. 18).  In a paragraph immediately following his finding that Plaintiff is not credible, the ALJ discussed certain of Plaintiff's specific impairments.  (R. 19).  The court quotes the portion of that discussion regarding mental impairments:

> Concerning her mental impairments, the medical record reveals that, under appropriate treatment, and in the absence of substance abuse, the claimant "reconstituted very quickly."  She told Dr. Minhas in April 2006 that her depression was doing better; at the time, he described her as being alert, oriented, calm, cooperative, coherent and pleasant, with no symptoms of depression.  She told Dr. Moss in June 2007 that she had been happy and active, though she was more tired due to staying up too late watching television.  She said that she felt somewhat depressed at times, adding that she would occasionally drink alcohol and sometimes forget to take her medication.

(R. 19).

After the summarization, findings, and analyses as discussed above, the ALJ discussed the opinion evidence and stated his findings in that regard.  (R. 19-21).  He noted the opinion of Plaintiff's therapist, Kris Marvin, and found that although it was not from an "acceptable medical source," it was entitled to "some weight."  (R. 19). Nonetheless, he rejected the therapist's statement that he was in support of Plaintiff receiving SSI benefits because receipt of such benefits is an issue reserved to the Commissioner.  Id.  He summarized Dr. Richards's opinion regarding Plaintiff's physical abilities, but determined it could not be "afforded significant weight" because "Dr.

Richards stated, 'There is not really any special testing.  We are just putting down what she says she cannot or can do.'"  (R. 19) (quoting Ex. 24F/13 (R. 409)).

The ALJ summarized in extensive detail the "Medical Source Statement - Mental" completed by Dr. Minhas, listing each of sixteen relevant mental limitations Dr. Minhas recorded on the form.  (R. 20) (citing Ex. 20F (R. 347-49)).  He noted Dr. Minhas's opinion was "also not afforded great weight" because (1) it was inconsistent with Dr. Minhas's findings in a treatment note three days earlier where Dr. Minhas stated that there was no evidence of psychosis, hallucinations, or delusions; no suicidal or homicidal thoughts; and that Plaintiff's thinking was logical, and insight and impulse control were fair; and (2) Dr. Minhas's opinion was formed without accurate information because when Plaintiff was first evaluated by Dr. Minhas, Plaintiff erroneously stated that she had tried marijuana once but did not like it and that although she drank a lot in 2001 and 2002, she quit in 2003; all despite her statements to other treating sources in 2007 and 2008 that she had used alcohol daily and had smoked one or two bowls of marijuana three times daily.  Id.

The ALJ also summarized the Psychiatric Review Technique, Mental Residual Functional Capacity Assessment, and Physical Residual Functional Capacity Assessment forms completed by the state agency nonexamining consultants who formed the opinions contained therein after reviewing the medical evidence.  (R. 20-21) (citing Exs. 8F, 9F, 15F (R. 253-70, 330-37)).  He afforded "significant weight" to these opinions because

"they are based on reviews of the medical record and are made with consideration of the provisions of Social Security assessment of disability."  (R. 21).

## A.    The Legal Standard

Medical source[1] opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical source opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20 C.F.R. §§ 416.913(d), 416.927(d); Social Security Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2011); SSR 06-3p, <u>id.</u> at 331-32 (relevant regulatory factors also apply to weighing "other source" opinions).  A physician who has treated a patient frequently over an extended period of time (a treating source)[2] is expected to have greater insight into the patient's medical condition, and his opinion is

---

[1]"<u>Medical sources</u> refers to acceptable medical sources, or other health care providers who are not acceptable medical sources."  20 C.F.R. § 416.902.  The regulations include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists within the meaning of "acceptable medical sources."  20 C.F.R. § 416.913(a)(2).  The regulations also provide examples of "other" medical sources which are not "acceptable medical sources," such as nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists.  <u>Id.</u> § 416.913(d); <u>see also</u>, SSR 06-3p, West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2011).

[2]The regulations define three types of "acceptable medical sources:"
"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  <u>Id.</u>                    (continued)...
"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  <u>Id.</u>

generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir.

2003). But, "the opinion of an examining physician [(a nontreating source)] who only

saw the claimant once is not entitled to the sort of deferential treatment accorded to a

treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th

Cir. 1995)). Nevertheless, opinions of nontreating sources are generally given more

weight than the opinions of nonexamining sources who have merely reviewed the medical

record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler,

814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412

(10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex

rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of

the nature and severity of [the claimant's] impairment(s) is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [claimant's] case record, [the Commissioner] will give it

controlling weight." 20 C.F.R. § 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec.

Reporting Serv., Rulings 111-15 (Supp. 2011) ("Giving Controlling Weight to Treating

Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating

source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)

(citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by

medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting

SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports 'to see if [they] "outweigh[]" the treating physician's report, not the other way around.'"  Goatcher, 52 F.3d at 290 (quoting Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)).  "Finally, if the ALJ rejects the opinion

completely, he must then give 'specific, legitimate reasons' for doing so." <u>Watkins</u>, 350

F.3d at 1301 (citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v.</u>

<u>Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.      The Parties' Arguments

Plaintiff claims the ALJ erred at every step in weighing the treating source opinion

of Dr. Minhas.  First, she argues that the ALJ made no finding whether Dr. Minhas was a

treating source or, if so, whether her[3] opinion was worthy of controlling weight.  (Pl. Br.

8).  She argues that the ALJ did not consider the regulatory factors for weighing medical

source opinions.  <u>Id.</u>  Then she argues that although the ALJ found that Dr. Minhas's

opinion could not be "afforded great weight," he did not specify the lesser weight of

which he found Dr. Minhas's opinion worthy.  (Pl. Br. 9).   Next, she argues that the

ALJ's RFC assessment appears to have accepted some of Dr. Minhas's limitations and

rejected the rest, but did not explain the basis for the different treatment within the same

opinion.  <u>Id.</u> at 9-10.  Finally, she argues that the ALJ did not provide "specific, legitimate

---

[3]It is not clear whether Dr. Minhas is a man or a woman.  Both the ALJ and
Plaintiff's counsel refer to Dr. Minhas as a man.  (R. 17, 19, 20) ("he"); (Pl. Br. 3 ("his,"
"he"), 7 ("he"), 8 ("his"), 13 ("his")).  Dr. Minhas was never mentioned during the ALJ
hearing, and the record does not reveal Plaintiff's personal knowledge regarding Dr.
Minhas's gender.  (23-52).  However, Dr. Minhas's full name is "Shaheena Minhas."  (R.
239, 419, 420, 422, 423, 425).  And, Dr. Hjalle refers to Dr. Minhas as a woman.  (R.
411) (Plaintiff "had an appointment with Dr. Minhas on the 22nd, and she did nothing for
her.").  Realizing that masculine is the generic gender in the English language, but also
recognizing that the letter "a" at the end of a given name identifies the bearer as a woman
in many cultures, and believing that a medical professional would be likely to have
personal knowledge of the gender of another practitioner who is treating the same patient,
the court has decided to address Dr. Minhas as a woman where necessary.

reasons" founded in the record evidence for rejecting Dr. Minhas's opinion, and explains how, in her view, a proper evaluation of the evidence does not support the ALJ's evaluation of the opinion. Id. at 10-12.

The Commissioner argues, on the other hand, that the ALJ properly evaluated the opinion evidence. He argues that the ALJ provided a detailed summary of the opinion, properly determined it was not entitled to great weight, and provided sound reasons, based upon the record evidence, to support his findings. (Comm'r Br. 12). He points out that the ALJ discounted the opinion because it was inconsistent with Dr. Minhas's treatment notes and was based upon inaccurate information supplied by Plaintiff. Id. at 13. He then argues that the ALJ thoroughly discussed the weight accorded Dr. Minhas's opinion and considered certain regulatory factors including the nature and extent of the treatment relationship, the degree to which the opinion was supported by the evidence, the consistency between the opinion and the record as a whole, and "other factors" such as the fact that Plaintiff supplied erroneous information to Dr. Minhas. Id. at 13-14. He argues that although an ALJ must consider the regulatory factors, he is not required to provide a detailed analysis of each factor, that a determination not to accord great weight to a medical opinion is, in fact, sufficient specification of the less-than-controlling weight

accorded to the opinion, and the fact that no physician opined Plaintiff is disabled[4]

supports the ALJ's decision.  (Comm'r Br. 14-15).

### C.   Analysis

Plaintiff is correct that the ALJ did not find that Dr. Minhas is a treating source,

and that he provided no discussion of whether her opinion should be accorded controlling

weight.  Moreover, although the Commissioner argues that the ALJ "considered the

nature and extent of the treatment relationship in his thorough summary of Dr. Minhas'

treatment notes" (Comm'r Br. 13) (citing (R. 17-20)), the record does not bear out that

assertion.  Nowhere did the ALJ mention either the nature or the extent of the treatment

relationship between Plaintiff and Dr. Minhas.  In fact, he stated only that Dr. Minhas

provided a "psychiatric evaluation" of Plaintiff in April, 2006 (R. 17), he noted that three

weeks later Plaintiff told Dr. Minhas she was doing better, id., and he noted that in March

2007 (three days before Dr. Minhas completed her opinion) Plaintiff told Dr. Minhas she

was having problems but that Dr. Minhas noted few psychiatric symptoms.  (R. 18, 20).

While it might be garnered from this discussion that Dr. Minhas treated Plaintiff from

April 2006 to at least March 2007, the ALJ did not specifically discuss this, and did not

mention that the record shows Dr. Minhas began treating Plaintiff on April 3, 2006 upon

referral by Mr. Marvin, and treated her in six recorded visits until at least March 26, 2007.

---

[4]The court notes that although Mr. Marvin is not a physician, he opined that he
supported Plaintiff receiving SSI benefits.  (R. 328).  Moreover, although Dr. Minhas did
not state that Plaintiff is disabled, the clear import of her Medical Source Statement is that
Plaintiff is disabled.  (R. 347-49).

(R. 236-39, 419-25).  The ALJ's discussion of only three visits underrepresents the extent of Dr. Minhas's treatment within one year by one-half.  This cannot be characterized as a "thorough summary" of that treatment.

Nevertheless, it is clear both from the record, and from the ALJ's discussion, that Dr. Minhas had a treating relationship with Plaintiff, but the ALJ did not specifically mention that fact.  However, he specifically stated that Dr. Richards "noted that the claimant is usually seen by a P.A." and that Plaintiff's therapist, Mr. Marvin, is not an "acceptable medical source" and "had been treating the claimant since August 2005."  (R. 19).  Thereby, the ALJ implied that Dr. Richards was not a treating source, and that although Mr. Marvin is not an "acceptable medical source" (and therefore not a "treating source") he is an "other" medical source who had a treating relationship with Plaintiff. Therefore, the decision shows that the ALJ specifically considered whether Dr. Richards and Mr. Marvin have a treating relationship with Plaintiff and whether they might be considered a "treating source," but it says nothing specific regarding the relationship between Plaintiff and Dr. Minhas.  Moreover, the ALJ did not make a finding that Dr. Minhas is a "treating source," and did not even discuss whether Dr. Minhas's opinion might be worthy of controlling weight.

The Commissioner is correct to point out that the ALJ provided a detailed summary of Dr. Minhas's opinion and discounted the opinion because it was inconsistent with Dr. Minhas's treatment note recorded three days earlier and because it was based upon inaccurate information supplied by Plaintiff.  Plaintiff does not contest the accuracy

14

of the ALJ's reasons for discounting Dr. Minhas's opinion, but rather she argues that the

ALJ did not mention all of the symptoms Plaintiff reported to Dr. Minhas in March 2007,

and she argues that it is not legitimate to rely upon inaccurate information to discount Dr.

Minhas's opinion.  Plaintiff's argument is without merit.  The ALJ summarized Dr.

Minhas's March 2007 treatment note:

> The following month, [Plaintiff] told Dr. Minhas that she was having
> problems sleeping, low energy, and concentration not as good [sic].  On
> examination, she was calm and cooperative.  She described her mood as
> depressed.  Her affect was congruent to mood.  There was no evidence of
> psychosis.  She denied having manic or hypomanic symptoms, and denied
> auditory or visual hallucinations or any delusions.  There were no suicidal
> or homicidal thoughts.  Thinking was logical, and insight and impulse
> control were fair.

(R. 18) (citing Ex. 25F/7-8 (R. 424-25)); see also (R. 20) (evaluating Dr. Minhas's

opinion and further distilling the March 2007 treatment note).  Plaintiff's argument that

the ALJ did not mention all of Plaintiff's reported symptoms focuses on the ALJ's

discussion at page 20 of the record and does not acknowledge that the ALJ had earlier

expressed a more complete summary of the treatment note at issue.  Although the ALJ's

summary does not include everything in the treatment note, considered as a whole, it is a

fair summary and reveals, as the ALJ found, that the opinion Dr. Minhas provided three

days later presents a more limited view of Plaintiff's condition.

Plaintiff cites no authority for her argument that inaccurate information is not a

legitimate reason to discount Dr. Minhas opinion and the court finds none.  It was

Plaintiff that erroneously reported to Dr. Minhas that she tried marijuana once but did not

15

like it, and that she quit drinking in 2003.  (R. 238).  However, Plaintiff told Dr. Moss on

November 26, 2007 that she used to use marijuana on a daily basis but that "now she is

trying to cut down to maybe four days a week."  (R. 402).  She also reported that "she

was drinking alcohol on a regular basis and now has quit."  Id.  She reported to the

counselor at Prairie Ridge Addiction Treatment Services on January 30, 2008 that she

was using marijuana daily throughout most of her life except when she was pregnant, that

her last use was on January 14, 2008, and that "[p]rior to this she was using

approximately 1-2 bowls three times a day."  (R. 393).  She reported drinking three

glasses of alcohol with two shots of alcohol in each glass approximately one time a

month, with her last use on January 1, 2008.  Id.  Therefore, Plaintiff's own reports reveal

that she provided erroneous information to Dr. Minhas in April 2006.  Moreover, as the

ALJ noted there is no record evidence that Dr. Minhas was ever made aware of the

erroneous report.  Substance abuse is relevant to a psychiatric evaluation and to

evaluation of Plaintiff's limitations in mental functioning.  Dr. Minhas included

"Substance Abuse History" as a specific section in his psychiatric evaluation of Plaintiff,

but Plaintiff provided erroneous information for the doctor's consideration in that regard.

(R. 238).  And, the court takes notice of the fact that the Psychiatric Review Technique

Form propagated by the Commissioner for evaluation of mental impairments includes

consideration of substance abuse in its evaluation.  (R. 253, 261).

 Plaintiff argues that Dr. Minhas's opinion was based upon a combination of

Plaintiff's functioning "based on her clinical presentation–whether substance abuse

played a role or not." (Pl. Br. 12).  However, as noted above, a history of substance abuse

is part of a plaintiff's clinical presentation, and Plaintiff's erroneous reporting in that

regard left Dr. Minhas with an inaccurate clinical presentation from which to assess

Plaintiff's limitations in mental functioning.  Dr. Minhas was provided erroneous

information regarding substance abuse; therefore, her opinion regarding Plaintiff's mental

limitations is open to question, and the ALJ properly discounted the opinion for that

reason.

Plaintiff also argues that the ALJ should have engaged in the analysis required by

20 C.F.R. § 416.935, "[i]f the ALJ felt that substance abuse was material to Summer's

limitations."  Plaintiff's argument misunderstands both the regulations and the ALJ's

decision.  The Act requires that if drug addiction or alcoholism is a contributing factor

material to the determination of disability, "an individual shall not be considered to be

disabled." 42. U.S.C. 1382c(a)(3)(J) .  20 C.F.R. §§ 416.935 et seq. are the regulations

propagated by the Commissioner to implement the drug addiction and alcoholism

provisions of the Act.  Benefit Reforms for Individuals Disabled Based on Drug

Addiction or Alcoholism, 60 Fed. Reg. 8140, 8151-52 (Feb. 10, 1995) (interim final rules

implementing provisions relating to nonpayment of benefits to individuals whose drug

addiction or alcoholism is a contributing factor material to the determination of

disability).

Pursuant to the Act, if a claimant is disabled and also suffers from alcoholism or

drug addiction, the Commissioner must determine whether the alcoholism or drug

17

addiction is a contributing factor material to the determination of disability.  If it is, the claimant will be found not to be "disabled" as defined in the Act.  Drapeau, 255 F.3d at 1215.  The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability "is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol."  Id.; see also 20 C.F.R. § 419.935(b)(1) (key factor is "whether we would still find you disabled if you stopped using drugs").

Pursuant to 20 C.F.R. § 416.935, a finding of disability is a condition precedent to the determination whether alcoholism or drug addiction is a contributing factor material to the disability determination.  Id., 255 F.3d at 1214 (construing the 1996 amendment of the Act along with the regulations).  Therefore, in a case where drug addiction or alcoholism is suggested by the evidence, the ALJ must first apply the five-step sequential evaluation process to determine whether a plaintiff's condition, including consideration of drug addiction or alcoholism, is disabling.  If so, the ALJ must then assess plaintiff's RFC limitations which would remain if she stopped using drugs or alcohol, and apply steps four and five a second time to determine whether the limitations assessed would be disabling.  Id., 255 F.3d at 1214-15.

Because the ALJ did not find Plaintiff is disabled in this case, there was no need to apply the regulation and consider whether drug addiction or alcoholism is a contributing factor material to a finding of disability.  Moreover, contrary to the suggestion in Plaintiff's argument, the ALJ did not find that "substance abuse was material to

18

Summers's limitations." (Pl. Br. 12). Rather, he impliedly found that substance abuse was relevant to Dr. Minhas's opinion regarding Plaintiff's limitations. As discussed above, because Plaintiff reported erroneous information in that regard to Dr. Minhas, the ALJ realized that erroneous information left Dr. Minhas's opinion regarding Plaintiff's mental limitations open to question, and he properly discounted the opinion for that reason.

As the court's discussion above reveals, the ALJ provided two reasons to discount Dr. Minhas's treating source opinion, and those reasons are supported by substantial evidence in the record. However, the court also found that the ALJ did not specifically discuss whether Dr. Minhas is a treating source and did not discuss whether the opinion might be worthy of controlling weight. Moreover, Plaintiff argues that the ALJ did not properly consider the regulatory factors for weighing medical source opinions, did not specify what less-than-controlling weight he accorded Dr. Minhas's opinion, and appears to have accepted portions of Dr. Minhas's opinion while rejecting many other portions, but did not explain the basis for this different treatment of different portions of the opinion. The Commissioner, on the other hand, argues that an ALJ is not required to discuss each regulatory factor in detail, that the ALJ here did, in fact, discuss certain of the regulatory factors, and that the ALJ's determination not to accord "great weight" to Dr. Minhas's opinion is a sufficient explanation of the less-than-controlling weight accorded to that opinion. In the circumstances of this case, the court cannot agree with the Commissioner.

19

With regard to the regulatory factors for weighing medical source opinions, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).  The holding of Oldham reveals the error in the ALJ's analysis in the circumstances of this case.  Here, as the parties agree the ALJ provided a detailed summary of Dr. Minhas's opinion, and as Plaintiff argues, the RFC which the ALJ assessed might be viewed as accepting certain of the limitations suggested by Dr. Minhas while rejecting many others. Yet, the ALJ did not explain the basis for his differing treatment of the various limitations.  Moreover, the ALJ "afforded significant weight" to the Psychiatric Review Technique Form and Mental Residual Functional Capacity Assessment completed by the state agency psychological consultant, Dr. Carole Kazmierski.  (R. 20) (citing Exs. 8F, 9F (R. 253-70)).  The only reasons given for according Dr. Kazmierski's reports "significant weight" was that "they are based on review of the medical record and are made with consideration of the provisions of Social Security assessment of disability."  (R. 21).

In summary, the ALJ found he could not give "great weight" to the treating source opinion of Dr. Minhas, but he gave "significant weight" to the nonexamining source opinion of Dr. Kazmierski.  Yet, he did not specifically note that Dr. Minhas is a treating physician, did not specifically consider whether Dr. Minhas's opinion should be given

"controlling weight," did not specifically acknowledge the "treating physician rule,"[5] and did not explain why the nonexamining source opinion of Dr. Kazmierski outweighs Dr. Minhas's opinion.  In the face of these shortcomings, the decision provides only two (correct but relatively benign) reasons to discount Dr. Minhas's opinion and two generic reasons to provide "significant weight" to the state agency consultant's opinion. Moreover the reasons the ALJ found to accord "significant weight" to the consultant's opinion could be attributed to the opinion of every state agency consultant in every Social Security case.  In short, the court simply cannot find that the ALJ's decision is sufficiently specific to make clear the weight he gave to the treating source's medical opinion and the reasons for that weight.  Remand is necessary for the Commissioner to properly weigh the medical source opinions in accordance with the standard explained above, explain the weight accorded the treating source opinion of Dr. Minhas, and if necessary, explain why he found that the opinion of Dr. Kazmierski outweighs the opinion of Dr. Minhas.

_____

[5] The ALJ's decision included boilerplate language stating that he had "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p."  (R. 16).  But, he did not explain how the regulation and the rulings should be applied to weigh medical source opinions; he did not recognize that a treating source's opinion might be worthy of controlling weight and is always worthy of deference; that a treating source's opinion is generally afforded greater weight than opinions of nontreating or nonexamining sources; that an ALJ must explain why other physicians' reports outweigh a treating source opinion; or that treating source opinions can only be rejected if specific, legitimate reasons are given.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is

REVERSED, and that judgment be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) REMANDING the case for further proceedings consistent with this opinion.


Dated this 6th  day of September 2011, at Kansas City, Kansas.



s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**